**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JOE AND REBECCA KIDDY,<br>Parents and Next Friends of B.K., a minor, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Case No. 24-CV-237-DES |
| WATTS PUBLIC SCHOOLS, | )<br>)<br>) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant, Watts Public Schools' ("Defendant" or "School District") Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Docket No. 16). For the reasons set forth below, Defendant's Motion to Dismiss is hereby GRANTED.

## I.   Background

Plaintiffs' Complaint alleges B.K., a fifth-grade student at Watts Public Schools was targeted, bullied, and assaulted by another student, M.H. (Docket No. 2). Plaintiffs allege that despite knowledge of the bullying, the School District was deliberately indifferent despite maintaining a policy regarding bullying. *Id.* at 1. On September 9, 2024, Defendant filed a Motion to Dismiss arguing that Plaintiff failed to state a claim for which relief can be granted and that the Court lacks subject matter jurisdiction over all of Plaintiffs' tort-based causes of action. Furthermore, Defendant argues that Plaintiffs' claims for punitive damages must be dismissed because government entities such as the School District cannot be held liable for punitive damages under any circumstances. (Docket No. 16). Plaintiffs responded to Defendant's Motion to Dismiss on September 30, 2024 (Docket No. 20) after which Defendant filed a Reply (Docket No. 21).

## II.     Analysis

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Courts would generally embrace a liberal construction of this pleading requirement and allow complaints containing only conclusory allegations to move forward unless factual impossibility was apparent from the face of the pleadings. *Robbins v. Oklahoma* 519 F.3d 1242, 1246 (10th Cir. 2008). However, the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), announced a new standard that held to withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim in which relief is plausible on its face. *Id* at 570. This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id* at 555 (quotation omitted). Therefore, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins,* 519 F. 3d at 1247. Courts are to always construe the allegations of a Complaint in a light most favorable to the Plaintiff; however, "the court will not read causes of action into the complaint which are not alleged." *Arnold v. City of Tulsa, Oklahoma*, No. 09CV811, 2010 WL 3860647, at *3 (N.D. Okla. Sept. 30, 2010) (citing *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc*., 263 F.Supp.2d 140, 148 (D. Mass. 2003)).

It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability – "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Instead, a plaintiff must state enough facts to nudge his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A complaint is 'plausible on its face' if its factual allegations allow the court to

2

'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Sch. Dist. No. 1*, 970 F.3d 1300, 1309 (10th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678).

Under Fed. R. Civ. P. 12(b)(1) a party may assert a defense to a complaint for lack of subject matter jurisdiction. There are two types of Rule 12(b)(1) motions, (1) those which attack the complaint on its face, and (2) those which attack the existence of subject matter jurisdiction in fact, quite apart from any pleading. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). When there is an attack of the complaint on its face, a district court's review is similar to a Rule 12(b)(6) motion in that "a district court must accept the allegations in the complaint as true." *Id*. at 1002. However, for a Rule 12(b)(1) motion attacking the facts upon which subject matter jurisdiction exists, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id*. at 1003. Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited since "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Under this authority, the Court looks at the pleadings presented along with all attached exhibits.

### A.  Plaintiffs' 42 U.S.C. § 1983 Causes of Action

#### i.  Municipality Liability

Defendant argues that Plaintiffs' first cause of action for violations under 42 U.S.C. § 1983 relates to the School District's alleged violation of B.K.'s rights to equal protection and substantive due process. (Docket No. 16 at 10). Defendant argues that Plaintiffs failed to allege facts which would plausibly show that any alleged violation of B.K.'s constitutional rights was caused by a municipal policy or custom of the School District. *Id.* Under § 1983, a municipality, or in this case, a school district, cannot be held strictly or vicariously liable for its employees' actions; liability

3

can attach only when "action pursuant to official municipal policy of some nature caused a

constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691 (1978).

Accordingly, to prevail on a § 1983 claim against a municipality, a plaintiff must show: "(1) a

municipal employee committed a constitutional violation, and (2) a municipal policy or custom

was the moving force behind the constitutional deprivation." *Cordova v. Aragon*, 569 F.3d 1183,

1193 (10th Cir. 2009). A municipal policy or custom includes the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> municipal policy, is so permanent and well settled as to constitute a custom or usage
> with the force of law; (3) the decisions of employees with final policymaking
> authority; (4) the ratification by such final policymakers of the decisions—and the
> basis for them—of subordinates to whom authority was delegated subject to these
> policymakers' review and approval; or (5) the failure to adequately train or
> supervise employees, so long as that failure results from deliberate indifference to
> the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal citations and

quotation marks omitted).

Defendant argues that Plaintiffs' only allegation regarding a "policy or custom" relates to

the School District's employees' failure to comply with the School District's bullying policy.

(Docket No. 16 at 11-12). Defendant argues that not following a policy is "the exact opposite of

what [Plaintiffs] would need to allege to plead that a policy or custom of the School District was

the cause of an alleged injury to B.K." *Id.* at 12. Defendant nonetheless acknowledges that

"[f]ailure to provide training can establish a municipal custom" *id.*, but only where the

municipality "has actual or constructive notice that its action or failure to act is substantially certain

to result in a constitutional violation, and it consciously or deliberately chooses to disregard the

risk of harm." *Carr v. Castle*, 337F.3d 1221, 1229 (10th Cir. 2003). In their Complaint, Plaintiffs

seem to allege that a PE teacher, Mr. Mitchell and/or other Watts Public Schools employees, were

not properly trained regarding the School District's bullying policy which included "the expeditious correction of the conditions causing such harassment . . . initiation of appropriate corrective actions . . . and enactment of methods to prevent reoccurrence of the harassment." (Docket No. 2 at 4). Plaintiffs additionally allege that Watts Public Schools placed M.H. and B.K. in the same room with "little-to-no supervision," despite knowledge that "M.H. had a history of bullying and assaulting B.K.," thereby "subjecting B.K. to the risk of further violence." *Id.* at 5. These facts are sufficient to allege deliberate indifference on the part of the School District, which would make the School District itself liable for Plaintiffs' § 1983 claims.

### ii.    Substantive Due Process Violation

While the Court finds that the School District could plausibly be liable, Defendant further argues that Plaintiffs' § 1983 due process claim should be dismissed due to Plaintiffs' failure to allege facts to support a substantive due process violation based on a "danger creation" theory. (Docket No. 16 at 14). The United States Supreme Court has recognized that students have a property right in public education which is protected by the due process clause of the Fourteenth Amendment. *Edwards ex re. Edwards v. Rees,* 883 F.2d 882, 885 (10th Cir. 1989) (citing *Goss v. Lopez,* 419 U.S. 565 (1975). Generally, state actors are liable under § 1983 only for their own unconstitutional acts, and not for the acts of third parties. *Robbins,* 519 F.3d at 1251. However, there are two exceptions to this general rule – the special relationship doctrine and the danger creation theory. *Liebson v. N.M. Corrs. Dep't,* 73 F.3d 274, 276 (10th Cir. 1996) (quotations omitted). Plaintiffs argue the danger creation theory applies in this case.

Under the danger creation theory, state officials can be liable for the acts of third parties where the state officials "created the danger" that caused the harm alleged. *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir. 1995). To invoke this exception, "a plaintiff must establish as a threshold

matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the

plaintiff in danger."[1] *Hernandez v. Ridley*, 734 F.3d 1254, 1259 (10th Cir. 2013) (citation omitted).

Once these preconditions are met, a plaintiff must then satisfy all elements of a six-part test:

> (1) defendant created the danger or increased plaintiff's vulnerability to the danger
> in some way; (2) plaintiff was a member of a limited and specifically definable
> group; (3) defendant's conduct put plaintiff at substantial risk of serious,
> immediate, and proximate harm; (4) the risk was obvious or known; (5) defendant[
> ] acted recklessly in conscious disregard of that risk; and (6) such conduct, when
> viewed in total, is conscience shocking.

*Id*. Defendant contends that Plaintiffs have not alleged facts establishing the "affirmative conduct"

threshold element and the "conscience shocking" element of their claim. (Docket No. 16 at 14-

18).

As a threshold matter, the danger creation theory requires Plaintiffs to allege facts that

demonstrate an employee of the School District engaged in affirmative conduct that created or

increased the danger to B.K. posed by M.H. Affirmative conduct typically involves "conduct that

imposes an immediate threat of harm, which by its nature has a limited range and duration" that is

"directed at a discrete plaintiff rather than at the public at large." *Gray v. Univ. of Colorado Hosp.*

*Auth*., 672 F.3d 909, 920 (10th Cir. 2012) (quotation omitted). As to this element, Plaintiffs'

Complaint alleges that M.H. had been reported to the School District's administration multiple

times for bullying and fighting and had a history of bullying and assaulting B.K. (Docket No. 2 at

3, 5). Plaintiffs further allege that despite this known history and propensity, the School District

and administrators placed B.K. in a class with M.H. with minimal supervision, resulting in M.H.

shoving B.K. twice and breaking his arm. *Id.* at 3. In essence, Plaintiffs allege that the School

---

[1] Defendant does not seem to dispute that the first prong is satisfied. The Court finds that Plaintiffs sufficiently allege private violence by stating "[d]uring the PE Class, an eighth-grade student named M.H., pushed B.K. from behind. B.K. was running, and when he did not fall after the first push, M.H. shoved B.K. a second time, causing B.K. to fall." This fall resulted in "B.K. suffer[ing] a compound fracture of his right arm requiring two surgeries." (Docket No. 2 at 3).

District was aware of M.H.'s "violent propensities" and still placed him, practically unsupervised, in a gym class with students three grades younger, including B.K. While the Court agrees this series of events as alleged shows a potential for danger, the Tenth Circuit has upheld "many state activities have the potential for creating some danger—as is true of most human endeavors—but not all such activities constitute a "special" danger giving rise to § 1983 liability." *Uhlrig,* 64 F.3d at 572. Plaintiffs' allegations must demonstrate "intentional or reckless, affirmative conduct on the part of [the School District] which created the danger." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1238 (10th Cir. 1999). While the Court is extremely sympathetic to Plaintiffs and their allegations, at most, Plaintiffs' allegations amount to mere negligence by the School District, which is not enough to find liability under the Due Process Clause. *See Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1239 (10th Cir. 1999) ("Liability under the Due Process Clause may not be based on negligent action"); *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) ("Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992) (a substantive due process violation must be more than an ordinary tort to be actionable under § 1983).

Even if the Court were to find that Plaintiffs alleged affirmative conduct on the part of the School District that was more than mere negligence, the Court cannot conclude that the conduct they alleged "shocks the conscience." Whether conduct shocks the conscience is a question of law for the Court to decide. *Perez v. Unified Gov't of Wyandotte Cty.*, 432 F.3d 1163, 1168 n.4 (10th Cir. 2005). The ultimate standard for evaluating a substantive due process claim is "whether the challenged government action shocks the conscience of federal judges." *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). "Conduct that shocks the judicial conscience . . . is deliberate government action that is arbitrary and unrestrained by the established principles of private right

and distributive justice." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (quotation omitted). "The behavior complained of must be egregious and outrageous." *Hernandez,* 734 F.3d at 1261. "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig,* 64 F.3d at 574. One example of this high standard is found in *Sutherlin v. Indep. Sch. Dist. No. 40*, 960 F. Supp. 2d 1254 (N.D. Okla. 2013). In *Sutherlin,* the Court considered whether a school district was liable where school officials witnessed and ignored a student being physically assaulted, placed the student in a room alone with a student they knew bullied him, called the student names in front of other students, did not investigate numerous reports of bullying and harassment, and ultimately discouraged students from reporting bullying. *Id.* at 1262. The Court found such conduct was not "brutal and offensive enough to meet the high standard of conscience shocking behavior." *Id.* at 1263. In this case, the alleged conduct is less egregious than the conduct in *Sutherlin.* Again, while the Court is sympathetic to alleged injuries sustained by B.K., even if the School District employees did everything that Plaintiffs accuse them of, such conduct does not rise to the level of "conscience shocking" as prescribed by the Tenth Circuit. Accordingly, Defendant's Motion to Dismiss Plaintiff's Substantive Due Process claim is GRANTED.

### B. Plaintiffs' State Tort Claims

Defendant argues in its Motion to Dismiss that Plaintiffs' state tort claims of negligent and intentional infliction of emotional distress and negligent training and supervision must be dismissed because Plaintiffs failed to comply with the Oklahoma Governmental Tort Claims Act (GTCA), 51 Okla. Stat. § 151, et seq. (Docket No. 16 at 20-23). The GTCA is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *Fuller v. Odom*, 741 P.2d 449, 451 (Okla. 1987); see also Okla. Stat. tit. 51, §§ 152(14), 153. In the

GTCA, the legislature adopted and reaffirmed sovereign immunity for the State, its political subdivisions, and all employees acting within the scope of their employment. Okla. Stat. tit. 51, § 152.1(A). This immunity is subject to a limited waiver to the extent and the manner specifically provided for by the provisions of the other sections of the GTCA. Okla. Stat. tit. 51, § 152.1(B); *see also Salazar v. City of Okla. City*, 976 P.2d 1056, 1066 (Okla. 1999).

To successfully bring a tort claim against the School District, an individual must comply with the notice and commencement provisions of the GTCA. Okla. Stat. tit. 51, §§ 153, 156. Notice is a central component of the GTCA. *See* Okla. Stat. tit. § 157(B) ("No action for any cause arising under this act . . . shall be maintained unless valid notice has been given[.]"); *Burghart v. Corrections Corp. of America*, 224 P.3d 1278, 1281 (Okla. 2009) (holding that the district court did not have jurisdiction over plaintiff's tort claim due to the failure to comply with the notice provisions of the GTCA). Compliance with the notice provision of the GTCA has "been interpreted to be either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention." *Gurley v. Memorial Hospital of Guymon*, 770 P.2d 573, 576 (Okla. 1989). Under the GTCA, before a lawsuit may be initiated against a political subdivision such as a school district,[2] written notice of the tort claim must be filed with the office of the clerk of its governing body. Okla. Stat. tit. 51, § 156(D). Section 157(B) of the GTCA provides that "[n]o action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given." Okla. Stat. tit. 51, § 157(B).

Defendant argues Plaintiffs' Complaint is deficient on multiple grounds as it relates to the GTCA. First, Defendant argues that Plaintiffs failed to allege compliance with the GTCA in their Complaint. (Docket No. 16 at 21). To state a claim for relief under the GTCA, a plaintiff "must

---

[2] Okla. Stat. tit. 51, § 152(11)(b) defines a "political subdivision" as including a "school district."

factually allege either actual or substantial compliance with the notice provisions of the [GTCA]"

in the complaint. *Mansell v. City of Lawton*, 901 P.2d 826, 828, n.2 (Okla. 1995) (citing *Willborn*

*v. City of Tulsa*, 721 P.2d 803, 805 (Okla. 1986)). Notably, despite raising multiple state law

claims, Plaintiffs' Complaint is devoid of an allegation regarding Plaintiffs' compliance with the

GTCA's pre-lawsuit notice requirement. Defendant argues that such failure cannot be remedied

because Plaintiffs also failed to provide notice of the tort claim to the clerk of the School District's

Board of Education. (Docket No. 16 at 23).

As explained above, compliance with "[t]he notice . . . provisions found in § 157 are

essential to the establishment of a right to a cause of action under the [GTCA]." *Lasiter v. City of*

*Moore*, 802 P.2d 1292, 1293 (Okla. Civ. App. 1990). "If there is a failure of compliance, then a

political subdivision is exempt from liability pursuant to the Doctrine of Sovereign Immunity . . .

and an action would fail to state a claim upon which relief can be granted." *Id.* In their Response,

Plaintiffs argue that a letter dated November 17, 2022, from their counsel to Defendant's counsel

at the time, Rex Earl Starr constitutes a valid notice of their tort claim. (Docket No. 20 at 8). In

support, Plaintiffs cite Oklahoma authority that notes written notice is all that is required for

substantial compliance with the GTCA. *Id*. While written notice is undoubtedly required, the

GTCA also requires such notice to include very specific information, including "the date, time,

place and circumstances of the claim, the identity of the state agency or agencies involved, the

amount of compensation or other relief demanded, the name, address, and telephone number of

the claimant, the name address and telephone number of any agent authorized to settle the claim."

Okla. Stat. tit. 51, § 156(E). The GTCA also requires that such notice of claim be "filed with the

office of the clerk of the governing body." Okla. Stat. tit. 51, § 156(D). The partes dispute whether

Plaintiffs' letter to counsel substantially complies with these notice provisions of the GTCA.

However, the Court need not decide this issue because, even assuming *arguendo,* that Plaintiffs' letter constitutes valid notice under the GTCA, their state law tort claims must nonetheless be dismissed for lack of jurisdiction because Plaintiffs failed to comply with the "commencement of action" provision of the GTCA.

In addition to the notice provisions set forth above, the GTCA further provides that after submitting a notice of tort claim, a claimant may not initiate a suit against a school district unless the school district has denied the claim in whole or in part. Okla. Stat. tit. 51, §157(A). This provision gives the school district ninety (90) days to consider the claim, and if the school district does not respond by either accepting or denying the claim during this period, the claim is deemed denied by operation of law as of the 90th day. *Id.* After denial of a written tort claim, claimants have 180 days to file suit. Okla. Stat. tit. 51, §157(B). The Oklahoma Supreme Court has noted that "expiration of the 180- day time period in § 157(B) operates to bar judicial enforcement of the claim[.]" *Shanbour v. Hollingsworth*, 918 P.2d 73, 75 (Okla. 1996). Thus, assuming the letter dated November 17, 2022, was sufficient to constitute notice under the GTCA, it was deemed denied 90 days later, on February 15, 2023. Plaintiffs then had 180 days from February 15, 2023, or until August 14, 2023, to file their lawsuit. Plaintiffs, however, did not file the instant action until July 10, 2024, almost a year after the deadline.

Damages for Plaintiffs' tort claims cannot be awarded when Plaintiffs fail to comply with the terms of the GTCA because, the "GTCA is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort." *Fuller,* 741 P.2d at 451. Since Plaintiffs have not complied with the GTCA in bringing a timely tort claim against the School District, Defendant's Motion to Dismiss Plaintiffs' state tort claims is GRANTED.

### C.  Plaintiffs' Claim for Punitive Damages

Finally, Defendant argues Plaintiffs' claim for "Actual and Punitive Damages" must be dismissed because Plaintiffs cannot recover punitive damages against the School District under § 1983 or the GTCA. (Docket No. 16 at 26). It is well-settled that punitive damages are not available against municipalities under 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1210 (10th Cir. 1998) (stating that "municipalities are not liable for punitive damages under § 1983"). Punitive damages are also unavailable under Title IX. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (holding punitive damages are not available in Title IX private rights of action against recipients of federal financial assistance for discriminating based on protected characteristics). Regarding Plaintiffs' state law claims, the GTCA expressly provides that punitive damages may not be recovered against a political subdivision such as the School District. Okla. Stat. tit. 51, § 154(C). In their Response, Plaintiffs concede that Defendant's assertions regarding punitive damages are correct and agree to voluntarily dismiss these claims. Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims for punitive damages is GRANTED.

### III.    Conclusion

For the reasons set forth herein, the Court concludes that Plaintiffs have sufficiently alleged a plausible claim for municipal liability under 42 U.S.C. § 1983 based on deliberate indifference allowing the claims against the School District to be brought; however, Plaintiffs have failed to state a viable substantive due process claim under the "danger creation" theory, as the alleged conduct, while unfortunate, does not rise to the level of conscience-shocking behavior required for constitutional liability. Furthermore, Plaintiffs' state law claims are barred for failure to comply with the mandatory timing requirements of the Oklahoma Governmental Tort Claims Act (GTCA),

and the Court lacks jurisdiction over those claims. Lastly, Plaintiffs' claims for punitive damages are dismissed as such relief is unavailable under both § 1983 and the GTCA. Accordingly, Defendant's Motion to Dismiss is GRANTED. Plaintiffs' Complaint is Dismissed without prejudice to its refiling.

IT IS SO ORDERED this 14th day of July, 2025.

_____

D. Edward Snow
United States Magistrate Judge